IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GERALD B. BELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 08-CV-0057 |
| vs. | ) | |
| | ) | Judge Kendall |
| BUSSE AUTO BODY, INC., | ) | |
| | ) | Magistrate Judge Cole |
| Defendant. | ) | |

## AMENDED COMPLAINT

NOW COMES Plaintiff, Gerald B. Bell, by his counsel, Goldberg Kohn Bell Black Rosenbloom & Moritz, Ltd., and complaining of Defendant, Busse Auto Body, Inc., states as follows:

### PRELIMINARY STATEMENT

1.   This employment discrimination action seeks redress for the violation of rights guaranteed to Plaintiff by 42 U.S.C. § 1981 and 42 U.S.C. § 2000e-5, *et seq*. Plaintiff seeks mandatory injunctive relief, declaratory relief and damages to redress Defendant's discriminatory employment practices.

### JURISDICTIONAL STATEMENT

2.   Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1343(a)(3) and (4) and 28 U.S.C. § 1331 to secure protection and redress deprivation of rights secured by 42 U.S.C. § 1981 and 42 U.S.C. § 2000e-5, *et seq*. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## VENUE

3. Venue is proper under 28 U.S.C. §§ 1391(b)(1) and (2).

## PARTIES

4. Plaintiff, Gerald B. Bell, is an African-American citizen of the United States who is a resident of the State of Illinois.

5. Defendant, Busse Auto Body, Inc., is a corporation recognized and sanctioned by the laws of the State of Illinois. At all times relevant hereto, Defendant has conducted, and continues to conduct, business in the State of Illinois.

## RELEVANT BACKGROUND

6. Bell, an African-American, began his employment with Defendant in May 2006 as an employee in its Des Plaines, Illinois facility.

7. In 2006, Bell discovered that Defendant was seeking an automotive detailer. Bell is an experienced and skilled automotive detailer.

8. Although Bell was ultimately hired by Defendant to detail cars based on his experience and talent, when he first applied for employment with Defendant, he was denied employment in favor of another, non-African American worker with less automotive detailing experience.

9. Subsequently, after the other employee did not work out, Bell was asked to tell Defendant the lowest wage at which he would agree to come to work for Defendant. Bell was hired to detail cars at $13.00 per hour.

10. From the inception of his employment through its involuntary termination, Bell performed to Defendant's reasonable expectations.

11. In May 2006, Defendant lauded Bell's performance, stating that he was a hard worker and commenting that Bell's performance was "great."

12. Any assertion contrary to the allegations in paragraphs 10 and 11 is merely a pretext for race discrimination.

13. Shortly thereafter, a co-worker of Bell's, who was of a different race than Bell, began harassing Bell and mistreating him in a hostile and demeaning manner. Included in the mistreatment were racially charged taunts and threats, including the threat that the co-employee would "beat [Bell's] black ass."

14. The co-worker's conduct had a material and deleterious affect on Bell's job, including his ability to perform his duties and his job satisfaction.

15. Bell complained to his supervisor about the co-worker's harassing behavior and explicitly asked his supervisor to intercede. The supervisor seemed disinterested in Bell's complaint and, on information and belief, took no action as a result of Bell's complaint.

16. Following the initial complaint to his supervisor, his co-worker's behavior, including inappropriate cursing and racial comments, continued unabated. After enduring this misconduct for several more days, Bell complained a second time to his supervisor about his co-worker's harassing behavior and misconduct.

17. To Bell's surprise, when he asked for his supervisor's help in addressing his co-worker's misconduct, his supervisor responded angrily by telling Bell "not to talk to [his co-worker] then" and by abruptly walking away.

18. To Bell's knowledge and belief, his supervisor took no action to stop the misconduct and harassment and the harassment and misconduct continued.

19. Although Bell attempted to avoid his co-worker whenever possible, the flippant statement of Bell's supervisor was not reasonably calculated to address the harassment and misconduct about which Bell complained. Bell and his co-worker worked alone in the same area and it was impossible for Bell to perform his job duties without communicating with his co-worker. Indeed, it was during such attempted communications that his co-worker would mistreat Bell and make inappropriate racial comments.

20. Within a week of Bell's second attempt to have his supervisor address his co-worker's harassment and misconduct, his supervisor witnessed a situation during working time where Bell's co-worker came inappropriately close to Bell's face and cursed Bell, including by stating "fuck you" and by calling him a "black ass" in front of the supervisor. The co-worker then walked away.

21. Although his supervisor heard the comment and his co-worker's inappropriate cursing, he approached and told Bell, "If you guys can't get along, I'm going to have to fire you."

22. When Bell asked, "Why me?" his supervisor merely walked away and went into his office, without making any similar statement or threat to the co-worker, even though Bell never used any profanity or racially inappropriate language to his co-worker.

23. Based on Bell's information and belief, neither his supervisor nor the Defendant took any disciplinary action or other action designed to remedy the situation caused by the inappropriate misconduct and harassment of his supervisor or to prevent a recurrence of this behavior. Indeed, despite Bell's continued attempts to avoid his co-worker whenever possible, the harassment and misconduct continued.

24. On information and belief, Defendant has a policy against using loud, profane and threatening language toward another employee.

25. On information and belief, other, non-African-American employees were not subjected to being cursed and threatened by their co-workers without being disciplined.

26. Within two days of his second complaint about his co-worker's misconduct and harassment, Bell was assigned new duties that did not involve use of his automotive-detailing skills. Bell was told instead to empty the garbage throughout the facility, to sweep and clean the facility, to pick up garbage and trash on the premises, and to perform other unskilled, manual labor including breaking down boxes in the hot sun.

27. Bell had never been assigned such unskilled labor duties before his protected conduct. His co-worker, who on information and belief made less on an hourly basis than Bell, was not asked to perform such non-skilled tasks. Instead, Bell's co-worker continued the more favorable work of detailing cars.

28. Notwithstanding Defendant's attempt to constructively discharge Bell, Bell continued to perform all duties to which he was assigned to Defendant's satisfaction without any indication by Defendant that he was not adequately performing his duties.

29. After approximately one work week of such non-detailing assignments, which he completed in a professional manner, Bell was reassigned to detailing cars. When he returned to the detailing area, his co-worker's inappropriate comments, threats and harassment continued.

30. In light of the continued harassment and misconduct by Bell's co-worker, even after Bell provided his supervisor with three opportunities to take action to

remedy the situation, Bell approached the President of the company, Frank Zeman, Jr., on or about August 4, 2008 as he arrived for work one morning and told him about his co-worker's harassing behavior. Zeman told Bell, "Hold it, let me get situated and I'll handle it."

31. But then Bell observed Zeman leave work early that day, prior to the lunch hour, without communicating further with Bell or, on information and belief, with his co-worker.

32. Later that same day, Bell was fired by his supervisor without cause and without warning in the open shop area in front of his co-worker. When Bell asked why he was being fired, his supervisor stated, "It's not because of no one here." Bell asked again, "Then why is it?" His supervisor did not respond and walked away.

33. Subsequent to his termination, Bell filed for unemployment compensation with the State of Illinois Department of Employment Security. During those proceedings, Defendant made false allegations about Bell's behavior that were also inconsistent with the excuse given by his supervisor for his termination.

34. Bell's co-worker was treated differently and more favorably than Bell in several material regards, including without limitation that he was not terminated or disciplined by Defendant as a result of the incidents described in this complaint, he was not, on information and belief, threatened or reprimanded by his supervisor for engaging in prohibited behavior at work even once observed by his supervisor, and he was not assigned non-skilled labor in lieu of his regular detailing duties.

35. For reasons including those set forth above, Bell was treated differently than a similarly situated, non-African-American co-worker who did not engage in protected

conduct, and was forced to endure racial harassment and retaliation, because of his race, African-American.

36. Defendant failed to address Bell's multiple complaints of race discrimination and harassment, even though Bell repeatedly complained to Defendant and Defendant observed the blatantly racist conduct he was subjected to by his co-worker.

37. The aforementioned acts and omissions of Defendant constitute intentional discrimination and retaliation against Bell on the basis of his race, African-American, and have deprived Bell the enjoyment of all benefits, privileges, terms, and conditions of his employment relationship in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 2000e-5, *et seq*.

38. As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Bell has suffered damages, including but not limited to, lost and foregone wages and benefits, and physical and emotional harm.

**COUNT I:  RACE DISCRIMINATION UNDER TITLE VII**

39. Paragraphs one through 38 are incorporated into this paragraph by reference.

40. Defendant terminated and otherwise discriminated against Bell because of his race.

41. Defendant treated non-African-American employees, including Bell's co-worker, more favorably than Bell because of his race.

42. Defendant intentionally and knowingly discriminated against Bell by subjecting him to different terms and conditions of employment because of his race.

43. As a result of the foregoing unlawful employment practices, Bell has suffered loss of income and benefits, loss of the enjoyment of life, loss of self-esteem, embarrassment and humiliation.

## COUNT II: RACE DISCRIMINATION UNDER SECTION 1981

44. Paragraphs one through 38 are incorporated into this paragraph by reference.

45. Bell's employment with Defendant was an at-will contract.

46. Defendants discriminated against Bell on the basis of his race in the performance, modification and/or termination of his employment contract, including his right to enjoy all benefits, privileges, terms and conditions of the employment relationship as a non-African-American employee.

## COUNT III: RETALIATION UNDER TITLE VII AND § 1981

47. Paragraphs one through 38 are incorporated into this paragraph by reference.

48. Bell engaged in protected activity under 42 U.S.C. § 1981 and 42 U.S.C. 42 U.S.C. § 2000e-5, *et seq*. by complaining to his superiors about his co-worker's racist, discriminatory comments and actions.

49. As a result of his protected activity, Bell was treated as if he had done something wrong, disciplined, punished by virtue of being assigned less appealing duties intended to discourage him or convince him to quit, and ultimately, terminated. Moreover, Defendant knowingly falsely accused him of engaging in misconduct to the Illinois Department of Employment Security in order to prevent him from obtaining benefits.

50. On information and belief, similarly situated employees who did not engage in protected activity under federal law were not subjected to the adverse actions directed against Bell.

51. The reason proffered by Defendant for terminating Bell's employment are a pretext for retaliating against Bell because of his complaints of race discrimination and racial harassment while working for Defendant.

52. The aforementioned acts and omissions of Defendant constitute retaliation against Plaintiff based on his opposition to the discriminatory work environment at Defendant and have deprived Plaintiff of his rights under 42 U.S.C. § 2000e-5, *et seq.* and of the enjoyment of all benefits, privileges, terms and conditions of his employment in violation of 42 U.S.C. § 1981.

53. As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff has suffered injury, including, but not limited to, lost and foregone wages and physical and emotional harm.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Gerald B. Bell prays for judgment against Defendant and respectfully request that this Court:

A. Declare the conduct of Defendant to violate the rights guaranteed to Plaintiff under federal law;

B. Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which retaliates against an individual for complaining of an unlawful employment practice;

    C. Order Defendant to make whole Gerald B. Bell by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

    D. Order Defendant to pay lost, foregone, and future wages to Gerald B. Bell;

    E. Grant Plaintiff such actual, consequential, compensatory, punitive and any other damages as the Court deems appropriate against Defendant;

    F. Grant Plaintiff his attorneys' fees, costs, disbursements; and

    G. Grant Plaintiff such further relief as the Court deems necessary and proper in the public interest.

## JURY TRIAL DEMAND

54. Plaintiff requests a jury trial on all issues of fact and law raised by the allegations in this complaint.

            GERALD B. BELL

            By /s/ Michael L. Sullivan
              One of Its Attorneys

Michael L. Sullivan
Mary E. Anderson
GOLDBERG KOHN BELL BLACK
 ROSENBLOOM & MORITZ, LTD.
55 East Monroe Street
Suite 3300
Chicago, Illinois 60603
(312) 201-4000

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on September 9, 2008, he caused a true and correct copy of the foregoing **Amended Complaint** to be served electronically through the Court's CM/ECF electronic notification system upon:

| | |
|---|---|
| Robert J. Kartholl | Edward J. Sedlacek |
| Law Offices of Robert J. Kartholl | Huck Bouma, P.C. |
| 125 South Bloomingdale Road | 1755 South Naperville Road |
| Suite 11 | Suite 200 |
| Bloomingdale, IL  60108 | Wheaton, IL  60187 |

/s/   Michael L. Sullivan